## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 00-94 |
| DAVID FIGUEROA, | : | |
|   Defendant. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                      July \_\_\_\_, 2008

On June 14, 2000, a jury found defendant David Figueroa guilty of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), and possessing a firearm having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  Defendant has filed a motion for a new trial under Federal Rule of Criminal Procedure 33 in light of newly discovered evidence supporting his innocence.  The newly discovered evidence is the testimony of Frank Justiniano confessing that he framed defendant by planting the heroin and revolver that resulted in defendant's conviction.  After a review of all the testimony at the hearing on this motion and the complete transcript of the trial, I conclude that Justiniano's testimony meets the requirements of Rule 33.  Therefore, I will grant defendant's motion for a new trial.

1

I.      **FACTUAL BACKGROUND**[1]

On October 30, 1999, Police Officer Ronald Dove heard gunshots and drove toward the noise. En route, Officer Dove received a radio report stating that a man with a gun was seen driving a blue, two-door 1984 Mercury Cougar with a Pennsylvania license plate number of 4201415. Shortly thereafter, Officer Dove drove by a parked Mercury Cougar fitting the description of the radio report. He observed defendant standing outside the parked car, but defendant subsequently entered the car and began driving. Officer Dove followed defendant and observed him make a left turn without signaling. Officer Dove then pulled defendant over. As Officer Dove approached the car, he saw defendant bend forward in the driver's seat. Officer Dove asked defendant to step out of the car. As defendant stepped out of the car, Officer Dove noticed the butt of a gun sticking out from underneath the driver's seat in plain view. He handcuffed defendant, and backup police officers moved defendant into a patrol car.

After recovering the gun, Officer Dove determined that it was a pellet gun. During direct examination at trial, Officer Dove testified that he then looked farther underneath the driver's seat and saw a newspaper-wrapped package (later determined to contain 2.4 grams of heroin in six bundles with twelve to thirteen packets bundle for a total of seventy-eight packets) and a .22-caliber revolver. (Trial Tr. 36:21-37:6, June 12, 2000 (hereinafter June 12 Tr.).) On cross-examination, Officer Dove admitted that he could not see anything when he looked under the

_____

[1] The parties agree that the only issue before the court is whether Justiniano's testimony would probably produce an acquittal in the new trial. The court will, therefore, limit its recitation of facts to those relevant to his testimony. Additional factual findings are available in the court's Memorandum and Order dated September 18, 2000, wherein I denied defendant's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See United States v. Figueroa*, No. 00-94, 2000 U.S. Dist. LEXIS 13344 (E.D. Pa. Sept. 18, 2000).

front of the driver's seat, so he instead "went to the rear of it to look underneath it."  (*Id.* at 63:8-21, 64:14-65:5.)  He had to retract the driver's seat to access the rear of the two-door vehicle, after which he recovered the revolver and package of heroin by pulling them from under the rear of the driver's seat.  (*Id.* at 65:6-24.)  The police did not fingerprint the .22 caliber revolver or the heroin package, so there was no physical evidence that defendant handled them.  (*E.g.*, Trial Tr. 20:17-21:21, June 13, 2000 (hereinafter June 13 Tr.); *id.* at 172:2:-173:8.)

On February 23, 2000, defendant was indicted for:  (1) possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) carrying a firearm during and in relation to the drug trafficking crime in violation of 18 U.S.C. § 924(c); and (3) possessing a firearm having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  At trial, defendant admitted that he owned the pellet gun but claimed that neither the heroin nor the revolver belonged to him.  (*E.g.*, June 13 Tr. 119:14-123:5.)  Defendant maintained that he was not aware that the revolver or the heroin were in the car.  (*E.g.*, *id.* at 148:9-150:1.)

Defendant further stated that on the day in question, he had a stereo system installed in the car.  (*Id.* at 110:13-111:19.)  After returning home at about 7:00 p.m., he left the car unlocked, with the windows down, on a corner of the block on which he resides.  (*Id.* at 115:6-119:4.)  A number of people gathered around and sat inside the car to listen to the newly installed stereo system.  (*Id.*)  Defendant testified that in the evening, he was wrongly accused by a drug dealer named Jose[2] of "gagging," which defendant defined as taking money from drug customers without providing drugs to them.  (*Id.* at 126:7-127:16, 128:20-130:10.)  Jose demanded that

---

[2] Defendant testified that Jose was also known as "Shep" but he did not know Jose's full name.  (June 13 Tr. 128:24-25.)

defendant leave the area, and as a result of this accusation, defendant and Jose wrestled to the ground. (*Id.* at 130:12-133:9.) After Jose released defendant, defendant went for a walk to cool down, during which time his car was left unlocked and unattended. (*Id.* at 133:21-135:118.) Defendant testified that, when he returned to his car, an individual named Will was in his car, and Jose and others were nearby. (*Id.* at 138:7-140:18.) During closing argument, defendant's counsel argued that a drug dealer selling drugs on defendant's street likely used defendant's car to store the drugs without defendant's knowledge or that drug dealers framed defendant because they thought he was "gagging" their potential drug customers. (*Id.* at 211:9-214:3.) In response, the government urged the jury to infer constructive possession of the .22 caliber revolver and the heroin. (*Id.* at 189:7-9, 189:21-191:3, 198:3-13, 221:3-222:8.). The court instructed the jury on the elements of constructive possession. (*E.g.*, Trial Tr. 24:15-25:22, June 14, 2000 (hereinafter June 14 Tr.).)

The jury found defendant guilty of all three counts on June 14, 2000. Thereafter, defendant filed a motion for a judgment of acquittal under Rule 29. Defendant argued that there was insufficient evidence to support an inference that he knew of the contraband's presence in the car. The court denied the motion. The court concluded that the evidence—including the contraband's proximity to defendant's position in the driver's seat, defendant's bending forward in the driver's seat prior to the search, and the discovery of the pellet gun partially concealed beneath the driver's seat—supported a reasonable juror's inference that defendant knew of the contraband's presence in the car. *Figueroa*, 2000 U.S. Dist. LEXIS 13344, at *8-14. The court sentenced defendant to 252 months of imprisonment and three years of supervised release. Defendant appealed, and the Third Circuit affirmed both his conviction and sentence on

4

December 18, 2001.  The Supreme Court denied defendant's petition for a writ of certiorari on

April 22, 2002.

On August 7, 2006, defendant filed the instant motion for a new trial under Rule 33 in

light of newly discovered evidence supporting his innocence.  (Def.'s Mot. New Trial 1-5.)

Defendant asserted that on March 8, 2006, Frank Justiniano, an inmate at the Federal

Correctional Institution in Fairton, New Jersey, spoke with defendant's counsel over the phone

and confessed that he had framed defendant by planting the revolver and heroin in defendant's

car.  (*Id.* at 4.)  Defendant's counsel acquired Justiniano's affidavit on June 23, 2006 and

submitted it with the motion.  (*Id.*)

In the affidavit, Justiniano states he was a member of a drug gang led by Santos Mendez.[3]

(Justiniano Aff. ¶ 1.)  Justiniano states that he successfully persuaded Mendez, who was angered

because he thought defendant was "gagging" in the gang's territory, not to kill defendant.  (*Id.*)

Instead, Mendez agreed to frame defendant by placing a gun and drugs in his car, and then by

placing an anonymous call to the police.  (*Id.*)  Justiniano claims to have participated in carrying

out Mendez's plan by placing "six bundles of heroin and a loaded .22 caliber revolver . . . under

the rear seat behind the driver's side."  (*Id.*)  In addition, he claims to have heard Mendez

anonymously calling the police to report a man with a gun driving a Mercury Cougar fitting the

---

[3]All members of Mendez's drug gang, including Justiniano and Mendez, were arrested
and convicted in this District on charges related to drug trafficking.  *See United States v. Mendez*,
Nos. 03-cr-87 & 88 (E.D. Pa.).  On December 13, 2005, Mendez was sentenced to imprisonment
for life.  *See id.* 03-cr-87-1 & 88-1.  Justiniano was sentenced to a total of 120 months of
imprisonment and ten years of supervised release, although his sentence was reduced on June 3,
2007 to a total of 101 months of imprisonment pursuant to the retroactive application of the
revised sentencing guidelines for crack cocaine sentences.  *See United States v. Justiniano*,
Order, Nos. 03-cr-87-2 & 88-4 (E.D. Pa. June 3, 2008).

description of defendant's car.  (*Id.*)  Justiniano states that he did not confess to framing

defendant earlier because he feared that Mendez would have him killed and that he would be

criminally punished for participating in the framing.  (*Id.* ¶ 2.)  Based on this affidavit, defendant

filed his motion for a new trial under Rule 33.

      The government initially opposed the motion by arguing that it was untimely under Rule

33.  The government contended that Federal Rule of Criminal Procedure Rule 45(b)(1)(B), which

allows a court to reach the merits of an untimely motion if excusable neglect caused the

untimeliness, is inapplicable to Rule 33(b)(1).  On August 15, 2007, I concluded that Rule

45(b)(1)(B) applies to Rule 33 and ordered an evidentiary hearing to determine whether

defendant meets the excusable neglect standard of Rule 45(b)(1)(B), and, if so, whether

defendant is entitled to a new trial based on Justiniano's statement under the standards of Rule

33(a).  *See United States v. Figueroa*, No. 00-94, 2007 WL 2345283, at \*5-6 (E.D. Pa. Aug. 15,

2007).  The evidentiary hearing was held on November 1, 2007, and the court heard oral

argument on November 14, 2007.

      During the November 1, 2007 hearing, the court heard testimony from Luciano Figueroa,

Frank Justiniano, Jose Carrasquillo, Daniel Rivera, and David Kozlow.[4]  Justiniano's testimony

is most relevant to the present issue—whether his testimony would probably produce an acquittal

in a new trial.[5]  Justiniano testified that he was part of Santos Mendez's drug organization.

---

[4] As discussed in my ruling from the bench on November 14, 2007, Luciano's, Carrasquillo's, and Kozlow's testimonies were primarily relevant to the issue of excusable neglect under Rule 45(b)(1)(B) and whether defendant met the newly discoverable evidence and reasonable diligence requirements of Rule 33.

[5] Justiniano came forward after he was sentenced for his other crimes and after the five-year statute of limitations for planting the drugs had expired.  He testified, however, that he was

Mendez and Justiniano suspected that Figueroa was "gagging" their drug customers.  (Hr'g Tr. 61:16-62:9, Nov. 1, 2007 (hereinafter Nov. 1 Tr.).)  Because of this, Mendez wanted to kill Figueroa, but Justiniano persuaded Mendez to frame Figueroa instead.[6]  (*Id.* at 62:10-63:25.) Justiniano believed this was a better alternative to killing Figueroa because Mendez was already being investigated for murder, and Justiniano "didn't want [Mendez] catching another body." (*Id.*)  Mendez and Justiniano decided to plant drugs and a gun inside Figueroa's car.  (*Id.*)

According to Justiniano, on October 29, 1999, or early in the morning of October 30, 1999, Mendez gave Justiniano a loaded .22 revolver and heroin.  (*Id.* at 64:10-65:4, 100:16-101:14.)  The heroin was "wrapped up in newspaper, like, thirteen, fourteen bundles of it."[7]  (*Id.* 64:16-4, 100:16-101:4.)  Justiniano admitted that on the night of October 29, 1999, he planted the revolver and heroin in Figueroa's "blue Cougar."  (*Id.* at 65:5-66:19.)  Mendez kept watch while Justiniano broke into defendant's car and hid the contraband.[8]  (*Id.* at 66:8-14.)  Justiniano used a filed-down key to unlock the car.  (*Id.* at 154:5-15.)  He planted the newspaper-wrapped

---

unaware of the statute of limitations when he first confessed to planting the drugs.  (*See id.* at 148:2-149:23).  He was instead motivated to help defendant.  (*Id.* at 148:12-16.)

[6] In the past, Mendez had members of his gang kill or attempt to kill individuals he suspected of gagging within the territory of his drug distribution operation.  For example, Rivera testified that Mendez's conviction for homicide resulted from a murder he ordered because the victim was gagging his customers.  (*Id.* at 188:14-189:6.)  Likewise, Rivera testified that he too was gagging Mendez's customers and Mendez's response was to have Rivera shot five times in the back.  (*Id.* at 168:15-169:4.)

[7] This testimony was inconsistent with Justiniano's affidavit in which he stated that there were six bundles.

[8] As described above, at significant times on October 30, 1999, defendant's car was unlocked.  At trial, however, defendant testified that he locked his car doors at night, "when I go to sleep" (June 13 Tr. 166:3-6), consistent with Justiniano's description that he broke into defendant's car at night.

heroin and revolver "[i]n back of the driver's seat in the bottom."[9]  (*Id.* at 153:14-18.)  He testified that they were not visible from outside of the car and that he hid them so that Figueroa would not discover them.  (*Id.* at 154:2-4.)  During the day on October 30, 1999, Mendez, and at least one other person, on Mendez's order, placed calls to the police to report Figueroa's possession of a weapon.  (*Id.* at 66:20-67:3, 151:23-153:10, 156:5-157:12, 162:24-164:4.)  Justiniano witnessed one of the calls in the early afternoon, between noon and 3:00 p.m.  (*Id.* at 66:18-67:37, 98:10-99:10.)

The government cross examined Justiniano on the substance of his factual testimony regarding the set up of Figueroa, his potential biases, including his desire to make good with the community before being released in 2011 (*see id.* at 146:7-147:25), and about his delay in coming forward with his testimony until after the statute of limitations expired (*see id.* at 148:2-149:17).

At the end of the November 14, 2007 hearing, I ruled that the motion for a new trial under Rule 33(a) filed on August 7, 2006 was timely because of excusable neglect under Rule 45(b)(1)(B), for the reasons set forth on the record.  (Hr'g Tr. 39:10-39:22, Nov. 14, 2007 (hereinafter Nov. 14 Tr.).)  I also held that Justiniano's testimony was not discovered by defendant until after trial and that defendant was diligent in promptly bringing the newly

---

[9] This answer was in response to the court's questioning of Justiniano to clarify testimony about the location of the drugs.  Earlier in the hearing, Justiniano testified that "[i]t's not under the driver's seat, it's in the back passenger seat."  He stated that he placed them "[b]ehind the driver's side in the back seat, the part that you sit at" and "in the back seat . . . behind the driver's side."  (Nov. 1 Tr. 65:22-66:6.)  However, in response to the prosecutor's question "[w]ere you worried at all about what Mr. Mendez would have thought if Mr. Figueroa would have looked under his seat for something and discovered the gun and drugs?," Justiniano responded "No," suggesting they were under Figueroa's driver's seat.  (*Id.* at 100:7-10.)

discovered evidence to the court's attention.  (*Id.* at 39:10-39:22.)  I had previously held, in the November 1 hearing, that Justiniano's testimony was not cumulative or impeaching and was material to the issues involved.  (Nov. 1 Tr. at 262:20-22.)  Thus, at the end of the November 14 hearing, I order briefing on the sole remaining issue—whether the new evidence would probably produce an acquittal at trial.  (Nov. 14 Tr. 39:23-40:8.)  Both parties have now submitted briefs addressing this issue.

## II.    DISCUSSION

### A.    Standard

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  For a motion based on "newly discovered evidence, the court may grant a new trial if five requirements are met:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (citing, e.g., *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)).  The decision to grant or deny a motion for a new trial lies within the discretion of the district court, *id.* (citing *Gov't of V.I. v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 1985)), but "[t]he movant has a 'heavy burden' in meeting these requirements," *United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000).

The only disputed requirement that remains in this case is whether Justiniano's testimony is of such substance and nature that it would probably produce an acquittal in a new trial.[10] Defendant argues that it probably would; the government disagrees, contending that Justiniano is not credible.  As discussed below, I find that Justiniano is not incredible and conclude that defendant has met his burden of establishing that Justiniano's testimony, if believed by the new jury, would probably produce an acquittal.

**B.      Frank Justiniano's Testimony Would Probably Produce an Acquittal**

Justiniano's testimony, if accepted by the jury, would probably produce an acquittal at trial.  Justiniano testified that he planted a .22-caliber revolver and newspaper-wrapped bundles of heroin in defendant's blue Mercury Cougar as part of a setup.  Because there was no direct evidence that defendant possessed the revolver and heroin, this testimony directly refutes the government's argument at trial that he constructively possessed them because they were under his seat in his car.  As such, Justiniano's testimony disproves a necessary element to defendant's conviction.  *See United States v. Jenkins*, 90 F.3d 814, 817-18 (3d Cir. 1996) (requiring evidence of "both 'dominion and control' over an object and knowledge of that object's existence" (internal quotation marks omitted) (quoting *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992)).

At the heart of the issue is whether Justiniano is credible.  *See United States v. Bostic*, 360 F. Supp. 1305, 1309 (E.D. Pa. 1973) (concluding that "[t]he Court must first decide whether the evidence presented is credible").  The credibility of the testimony of a newly discovered

---

[10] The government presently disputes only whether defendant has satisfied the fifth requirement.  (Gov't Mem. Opp. Def.'s Mot. New Trial 2.)

witness is left to the court's broad discretion.  *United States v. Maddox*, 444 F.2d 148, 152 (2d

Cir. 1971) (holding that, in the context of newly discovered testimony, "it is clear that the trial

judge . . . has broad discretion in deciding whether the new evidence is credible").  Defendant

contends that Justiniano's testimony was based on firsthand knowledge, consistent in all material

ways with evidence presented at his trial, and delivered without probable bias or incredible

demeanor.  The government counters that Justiniano's testimony conflicts with credible evidence

and is inherently incredible and that Justiniano is unreliable because he lacked personal

knowledge and is biased.

     Defendant has the better of the argument.  Justiniano testified based on firsthand

knowledge.  He described his personal involvement in events at issue and provided detailed

descriptions of those events.  He testified thoroughly throughout the proceedings.[11]  His personal

knowledge is substantiated by others' testimonies as well.  Kozlow testified to the fact that he

drafted Justiniano's affidavit based on Justiniano's unprompted statements, and Justiniano hand-

edited the typed affidavit.  (*E.g.*, *id.* at 218:18-16; 243:7-16.)  Furthermore, the court assured

itself that Justiniano did not testify based on information learned from sources other than his own

observations.  (*Id.* at 154:16-155:24.)

---

     [11] Some of the government's attempts to undermine his testimony are belied by the record
and my recollection of the hearings.  For example, the government attempts to impeach
Justiniano because, ostensibly, he did not mention that Mendez placed multiple calls to the police
until re-direct examination.  (Gov't's Mem. Opp'n Def.'s Mot. New Trial 6.)  In fact, on direct
examination, in response to the question "Were you present when Santos Mendez made the
call?," he answered, "Not his first call, no"; and to the question, "Were you present when he
made a call to the police?," he replied, "Yes, one of them."  (Nov. 1 Tr. 66:20-23.)  Justiniano
did not conceal that Mendez placed multiple calls to the police when first addressing the issue in
his testimony.  (*See also id.* at 242:16-25 (testimony of Kozlow explaining that he focused
Justiniano's affidavit on "items that he had personal knowledge of").)

Justiniano's firsthand knowledge is bolstered by a reasonably high level of consistency between his testimony and the other evidence presented at trial.  He testified consistently with Officer Dove and with the physical evidence presented at trial with respect to the type of car (*compare* June 12 Tr. 34:22 (Dove: "a blue Mercury Cougar") *with* Nov. 1 Tr. 65:14 (Justiniano: "A blue Cougar")); type of gun (*compare* June 12 Tr. 36:22-23 (Dove: "a 22 caliber revolver") *with* Nov. 1 Tr. 64:16 (Justiniano: "a .22 revolver")); and drug type, packaging, and amount (*compare* June 12 Tr. 36:25-37:6 (Dove: "a newspaper wrapped package" of "six, what we call bundles, each bundle contained 13 packets" of "[h]eroin") *with* Nov. 1 Tr. 64:16-65:6 (Justiniano: heroin, "wrapped up in newspaper, like, thirteen, fourteen bundles of it"); Justiniano Aff. ¶1 ("six bundles of heroin").  In addition, Justiniano's testimony was substantially similar to that of Officer Dove regarding the location of the contraband in the car.  Officer Dove testified that he moved the back portion of the seat forward, leaned into the rear of the vehicle, looked under the front driver's seat from the rear, and found the revolver and the packet of heroin "towards the rear of the front seat."  (June 12 Tr. 36:21-23, 63:21-65:25.)  Justiniano testified that he placed the revolver and heroin "[b]ehind the driver's side in the back seat, the part that you sit at."  (Nov. 1 Tr. 66:5-6.)  He later clarified that he placed them "[i]n back of the driver's seat in the bottom."[12]  (*Id.* at 153:20-54:4.)  Although somewhat inconsistent as to the location, the court is satisfied that this could be the result of a faulty memory by Justiniano, seven years

---

[12] Justiniano likewise accepted the prosecutor's characterization that defendant could have reached under his seat and discovered the revolver and heroin (*see* Nov. 1 Tr. 100:7-10); and he noted, under the court's questioning, that the revolver and heroin would not have been visible if somebody looked into the car (*see id.* at 154:2-4).

after the fact, and not an intentional falsehood.  Justiniano's testimony as a whole is thus substantially consistent with the trial record in these material aspects.[13]

The government argues at length that the setup was so ill conceived or out of character as to be disbelieved.  Justiniano and others testified that Mendez typically resorted to violence, not subterfuge, to punish individuals he believed were "gagging" his customers.  Justiniano also admitted many facts suggesting that the plan had the potential to go awry.  Nonetheless, a poorly planned setup does not necessarily undermine its actuality, and Justiniano consistently explained the logic of the setup vis-á-vis Mendez's suggested alternative of killing defendant (to keep Mendez from becoming responsible for and potentially prosecuted for another murder), thoroughly described Mendez's and his efforts to carrying the plan out, and admitted their concerns, and at times lack thereof, during the events.  In addition, the testimonies of other witnesses fit nicely into his narrative.  For example, Carrasquillo, the individual with whom defendant got into an altercation on the night he was arrested, testified that he demanded defendant leave the street corner because Mendez threatened defendant for "gagging."  (Nov. 1 Tr. 110:14-117:16.)  Thus, the court finds that Justiniano's testimony regarding the setup was not incredible.

While the substance of Justiniano's testimony is evidence of his credibility, the tenuous nature of a claim of bias and his demeanor throughout the proceedings also dissuade the court from concluding that he lacked credibility.  Justiniano was a friend of a friend of defendant's

---

[13] For the purposes of the present motion, the court finds that Dove and Justiniano were referring to a substantially similar location—the floor of the car immediately under the back of the driver's seat and in front of the rear passenger's seat, where a passenger's legs would be positioned.  Both parties will, of course, want to develop this testimony more fully during the new trial.

brother, but this tenuous connection does not undermine his testimony for the present motion, nor do the government's arguments that Figueroa was on easy terms with the Mendez drug organization.[14]   Based on my observations, I also find that Justiniano answered the questions posed to him directly, offered appropriate clarification, and did not evade questions that cast him in a negative light.   I cannot conclude that Justiniano's testimony was incredible.

As a result, I find Justiniano's testimony is a sufficient basis on which to grant defendant's motion for a new trial.   Justiniano's testimony directly refutes an issue material to and necessary for defendant's conviction—his constructive possession of the revolver and heroin—and would probably produce an acquittal if believed by a reasonable jury.   He testified from first-hand knowledge, in detail and with substantial similarity to the evidence presented at trial.   And, he testified without probable motivation to lie and with a sufficiently credible demeanor.   In light of these conclusions, the government's arguments against his credibility are unavailing.   Although the court has some reservations about Justiniano's testimony, the court cannot conclude that he is not credible.   *See United States v. Kelly*, 04-605, 2006 WL 2506353, at *14 (E.D. Pa. Aug. 29, 2006) (concluding that, despite the court's reservations about a newly

---

[14] The cases cited by the government require a much closer tie between the individuals to infer the existence of bias.  *See United States v. Duke*, 255 F.3d 656, 659 (8th Cir. 2001) (finding incredible the exonerating testimony of the defendant's brother when that brother had already been convicted of the same crime); *United States v. Kamel*, 965 F.2d 484, 494-95 (7th Cir. 1992) (finding incredible an exonerating confession based on "brotherly loyalty," wherein the brother took "full blame for a crime for which he, as well as his brother, ha[d] already been convicted"); *United States v. Menard*, 939 F.2d 599, 600 (8th Cir. 1991) (finding incredible the exonerating affidavits of defendant's mother and sister when they contradicted the trial testimony of many witnesses); *United States v. Oliver*, 683 F.2d 224, 229 (7th Cir. 1982) (finding incredible an exonerating, informal letter by a friend of the defendant who spoke to the defendant after the crime but did not come forward to testify and be cross-examined).   The court finds that the tenuous familiarity in this case has not resulted in the bias suggested by the government.

discovered witness's exonerating testimony, the defendant was entitled to "have a jury evaluate the credibility of [the witness]" where numerous reasons supported a likelihood that the jury would find the testimony credible); *United States v. Morales*, No. 90-441, 1991 WL 276022, at *2 (E.D. Pa. Dec. 18, 1991) (same). Thus, his testimony was of such substance, and of such a nature, that on a new trial, the newly discovered evidence would likely be found credible by the jury and therefore probably produce an acquittal. Considering defendant's lengthy sentence, allowing a new jury to weigh Justiniano's testimony is the sound course. During the new trial, the government is, of course, free to cross-examine Justiniano on the inconsistencies in testimony that it has raised and on his motivations to testify. The jury will then judge his demeanor and decide if he is credible. If the jury finds that Justiniano is credible it will probably acquit defendant because, at minimum, the jury is likely to have a reasonable doubt as to whether he possessed the gun and drugs that led to his conviction.

## III.     CONCLUSION

Defendant has met his heavy burden of establishing each of the five elements necessary for the court to grant him a new trial under Rule 33(b)(1). As discussed in this memorandum, Justiniano's testimony was such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. The court will therefore grant defendant's motion for a new trial under Rule 33.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 00-94 |
| DAVID FIGUEROA, | : | |
| Defendant. | : | |
| | : | |

## Order

AND NOW on this _____ day of July 2008, upon careful consideration of defendant

David Figueroa's motion for a new trial pursuant to Federal Rule of Criminal Procedure Rule 33

(Docket No. 56), defendant's memorandum of law in support of the motion, the government's

response thereto, and defendant's reply, IT IS HEREBY ORDERED that

1.  Defendant's motion for a new trial is GRANTED.

2.  The case is LISTED FOR TRIAL to commence on September 2, 2008 at 10:00

    a.m. in Courtroom 14-B U.S. Courthouse, 601 Market Street, Philadelphia,

    Pennsylvania.


_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge